[No. 8391. Department One. — November 27, 1885.]

HENRY BARROILHET, RESPONDENT, v. PHILIP ANSPACHER ET AL., APPELLANTS.

STATUTE OF LIMITATIONS — EXECUTION SALE — DEED. — The statute of limitations does not begin to run against a purchaser of real estate at an execution sale before he becomes entitled to a deed. Whether the statute commences to run then or at the time when the deed is actually executed and delivered to the purchaser, not decided.

TRUST — TRANSFER OF REAL PROPERTY — CONSIDERATION PAID FOR A PERSON OTHER THAN THE GRANTEE — LACHES. — In February, 1877, certain real property was transferred by deed to the plaintiff, under an agreement that he should reconvey the same to the defendants, for whom the consideration of the transfer to the plaintiff was paid by a third person. The defendants were in possession of the property at the time of the

transfer, and so continued until the commencement of the action in April, 1881, the plaintiff retaining the naked legal title. *Held,* that a trust resulted in favor of the defendants, and that they were not guilty of laches in failing to assert their rights against the plaintiff until he had taken some steps to disturb them.

Appeal from a judgment of the Superior Court of the county of Alameda, and from an order refusing a new trial.

The facts are stated in the opinion.

*J. M. Rothchild,* and *J. E. McElrath,* for Appellants.

*Curtis H. Lindley,* for Respondent.

Belcher, C. C. — This is an action to quiet title to a block of land known as block No. 5, in the town of Livermore, in Alameda County.

By their answer, the defendants set up the statute of limitations, and then certain facts under which they claimed that the plaintiff held the title to the land in trust for them.

The case was tried and judgment rendered in favor of the plaintiff, and the appeal is from that judgment and an order denying a motion for new trial.

The facts out of which the case arose are as follows: In March, 1875, A. D. Splivalo owned this block No. 5, and other parcels of land in Alameda County. E. M. Derby had a judgment against Splivalo for $347.30, which was a lien upon all such lands.

The defendants, Philip and Simon Anspacher, wished to purchase block No. 5 for eighteen hundred dollars, but desired that it should be first released from the lien of this judgment. Thereupon Splivalo, the Anspachers, Derby, and E. B. Mastick, his attorney, had a conference, at which Derby virtually agreed to release block No. 5 from the lien of his judgment upon the payment to him of $150. The Anspachers then paid Splivalo the purchase price of the block, — eighteen hundred dollars, —

took a deed of it, dated March 17, 1875, and at once went into possession, and have been in possession of it ever since. Splivalo afterwards paid Derby the $150, but instead of releasing the block from the lien, he simply credited the money upon his judgment.

In August, 1875, an execution was issued on the judgment, and on the twenty-second day of November following, the block in question and eight other blocks of land in the town of Livermore were sold thereunder, and bid in by Derby in satisfaction of the amount still remaining due on his judgment.

In May, 1876, just before the time for redemption expired, Splivalo, Anspacher, Pardini (who was interested in one of the blocks sold), and Derby, met at Mastick's office to discuss the situation. It was found that the amount of money necessary to redeem all the property sold was $412, and it was agreed that Anspacher's block No. 5, Pardini's block, and one or two other blocks should be redeemed or released from the sale. As the most convenient way of effecting this release, it was suggested that the title to all the property sold be put in the name of the plaintiff, and that he then make the deeds of release. This was agreed to, and thereupon Splivalo and Mastick went to see the plaintiff about it. Splivalo informed the plaintiff how they proposed to put the title to the property in his name, how many blocks had been sold, and that block No. 5 and three other blocks were to be deeded over by him to the parties to whom they really belonged, and whose names were given to him. The plaintiff replied, "Do whatever you please," and then agreed to deed the blocks over as requested. After this interview, and on the twenty-seventh day of May, Splivalo drew his check for $412 on the plaintiff, who was a banker, and with whom he already had an overdrawn account, and then went with the check to the plaintiff's bank and drew the money on it, the money so drawn being charged up to his account. Splivalo then went back to Mastick's

office and paid him the $412, and took from him a receipt reading as follows: —

> " *E. M. Derby* v. *A. D. Splivalo.*
>
> "$412.  Received of A. D. Splivalo $412, in full for redemption of land sold under execution, issued in the above-entitled case.
>
> "(Signed)     E. B. & J. W. MASTICK,
>
> "Attorneys for E. M. Derby.
>
> "Dated May 27, 1876."

Mastick immediately paid the money over to Derby.

Splivalo testified: "I paid the money just before the time for redemption expired, but it was not to redeem. It was for the purpose of getting an assignment of all the property in the name of Barroilhet, who owned all the other blocks in dispute.  The assignment was not made on that day, because Derby was not there, and the thing went on until 6th of February, 1877. . . . . Then I went to Mastick, and Mr. Mastick had the certificate. He wrote the assignment on the back of the certificate. Mr. Derby was sent for, and signed the assignment to Barroilhet.  It was acknowledged, . . . . and then my clerk came to Oakland and got the sheriff's deed, and immediately thereafter Mr. Pardini requested Barroilhet for a deed to block 31, and Barroilhet made it.  The others were not requested, and they remained so. . . . . I had no conversation with Barroilhet when the deed was made.  The deed was delivered to Barroilhet; the certificate never was. . . . . The money was my money. I borrowed it from Mr. Barroilhet on my open account."

Mastick testified: "I went with Splivalo and called upon Mr. Barroilhet, and he said whatever we did was all satisfactory to him.  He turned the matter over to Mr. Splivalo to give directions. . . . . The distinct understanding was, that these people were to be protected. . . . . Anspacher was to be protected,—I mean, freed from the lien, or freed from the sale. . . . .

"Q.—Is your recollection clear that you gave this redemption receipt to Splivalo?

"A.—I know it was; I am as certain about it as anything; I know that I actually gave this, and it brings to my mind distinctly that all this time I regarded this property as redeemed property, . . . . and I know it was at that time intended as a redemption, and was a redemption. I admit that it was not exactly a good way to do it,—to make an assignment of the certificate,—but it was done with the expectation that all these people were to be protected and none to be harmed by it, and nothing was paid for it at all. . . . .

"Q.—Mr. Mastick, did Mr. Barroilhet pay anything for that certificate?

"A.—Not at all; he paid nothing. When the assignment was made, and the money was paid for the redemption and the receipt given, it was brought in by Splivalo and paid by him."

Upon the facts of the case, the court below was of the opinion that the plaintiff is the owner in fee-simple, and entitled to the possession, of the premises in controversy; that no trust exists in favor of the defendants in the property, and that the plaintiff holds the legal title free from any equitable claim whatever on the part of the defendants.

1. The sale under the execution took place on the twenty-second day of November, 1875, and the purchaser was not entitled to a sheriff's deed until the twenty-third day of May, 1876. This action was commenced on the eighteenth day of April, 1881, and the action was therefore not barred by the statute of limitations, and this is so whether the statute commenced to run as soon as the deed might have been made to the purchaser, or not till it was actually made and delivered to the plaintiff. (*Jefferson* v. *Wendt*, 51 Cal. 573; *Pratt* v. *Pratt*, 96 U. S. 704.)

2. Our Civil Code provides as follows:—

"Section 853. When a transfer of real property is

made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

It is claimed for respondent that when the title to the block of land in controversy was transferred by the sheriff's deed to him, no trust resulted in favor of the appellants, because the consideration for the transfer was not paid by *them*. But in order that a trust might result in their favor, it was not necessary that the consideration for the transfer should have been paid *by* them. It was enough if it was paid *for* them.

That the consideration for the transfer of this block No. 5 was paid for the appellants is clear from the evidence, and there is no conflict. First, the $150 was paid by Splivalo to release this block from the lien of the judgment, and this was done *for* the appellants. Second, the $412 was paid by Splivalo to place the title to this block in the name of the respondent *for* the appellants. And when the respondent received his deed, he knew that the consideration for the transfer to him had been paid by Splivalo for the appellants, and that he had agreed to accept the title and hold it for them.

We think it clear, therefore, that when the respondent accepted the sheriff's deed, he took the title to the block of land in controversy in trust for the appellants.

It is urged further that the appellants were guilty of laches in asserting their rights, and therefore the trust cannot be enforced in their favor. But this position cannot be maintained. They were in possession of the property, and owned the entire beneficial interest therein. The respondent was out of possession, and held the naked legal title for them. They might safely rest content, therefore, until he took some steps to disturb them in their rights.

It follows that the judgment and order should be reversed, and the cause remanded for a new trial.

SEARLS, C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and cause remanded for a new trial.