[Sac. No. 1756.   Department Two.—June 3, 1911.]

## AL BREITENBUCHER and A. A. MARTIN, Respondents, v. E. OPPENHEIM and H. E. KLEINSORGE, Respondents, and H. H. HEWLETT, Appellant.

RESULTING TRUST—ACTION TO ESTABLISH—PLEADING PAROL CONTRACT SIMILAR TO LEGAL IMPLICATION.—An action to establish a resulting trust in land arising from a part payment of the consideration is not changed into an action to establish an express trust therein, merely by the averment of a verbal agreement respecting the purchase of. the land which, in the absence of any contract, the law would imply.

ID.—EVIDENCE OF PAROL AGREEMENT ADMISSIBLE.—In such action evidence is admissible of such verbal agreement for the purpose of showing the entire transaction out of which the resulting trust is claimed to have arisen.

ID.—PAYMENT OF CONSIDERATION FOR PURCHASE OF LAND.—In order that a trust may result in favor of one contributing to the consideration for a transfer of land, the title to which is taken in the name of another, it is not necessary that the consideration should have been paid by him. It is enough if it was paid for him.

ID.—FINDING OF RESULTING TRUST—EVIDENCE—INCONSISTENT ACTS OF PLAINTIFF.—Where the evidence, although contradictory, is sufficient to sustain the finding of the trial court establishing a resulting trust, the appellate court will not interfere therewith, merely because certain isolated acts of the plaintiff, when considered by themselves, seem inconsistent with that theory.

ID.—INTEREST PROPORTIONATE TO CONSIDERATION PAID.—Where there is no uncertainty regarding the amount of money contributed by one person towards the purchase price of land, the title to which is conveyed to another, and its proportion to the entire purchase price, a trust results in the land for the person who has contributed to the purchase price proportionate to the amount so paid by him.

ID.—NON-JOINDER OF PARTIES—APPEAL.—A question of non-joinder of parties, which was not raised by demurrer or otherwise in the trial court, cannot be raised for the first time on appeal.

ID.—NOTES AND DEED OF TRUST FOR PART OF PURCHASE PRICE—JUDGMENT DETERMINING INTEREST OF PARTIES.—The fact that the parties in whose name a transfer of land was taken, gave their individual notes secured by a deed of trust of the land as part payment of their share of the purchase price, will not warrant the reversal of a judgment establishing a resulting trust in the land, in which the interest of the parties was adjudged to be in proportion to the amount contributed by each, either in money or in notes, and leaving unaffected any lien that the trustee, who was not made a party to the action, might have on account of the balance of the purchase price.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order refusing a new trial. Frank H. Smith, Judge.

The facts are stated in the opinion of the court.

Charles H. Fairall, and Avery C. White, for Appellant.

Murphy & Percival, and R. C. Minor, for Plaintiffs and Respondents.

Clary & Louttit, for H. E. Kleinsorge, Defendant and Respondent.

MELVIN, J.—H. H. Hewlett, one of the defendants, has appealed from a judgment in favor of plaintiffs, and from an order denying his motion for a new trial. The action was brought for the purpose of having a resulting trust declared in favor of plaintiffs, and for an accounting of the rents and profits of the property involved. The court found that defendants Oppenheim and Hewlett on the first day of May, 1905, purchased from one Covell a certain tract of land in San Joaquin County for $16,725; that Oppenheim paid on said purchase price $8,362.50, or one half thereof, Hewlett $7,000, or 415-1000 thereof, and the plaintiffs $1,362.50, or

85-1000 of the entire amount expended in the purchase of the
said real property; that by agreement between plaintiffs and
defendants, Oppenheim and Hewlett, the deed to the prop-
erty was taken by the two latter persons; that Hewlett did
not purchase an undivided one-half interest in the land for
seven thousand dollars, but that he did have relations with
plaintiffs as co-purchasers; that Hewlett held an undivided
85-1000 of the said property in trust for plaintiffs; and that
Breitenbucher and Martin were entitled to their proportionate
share of the rents, issues, and profits for the years 1905, 1906,
and 1907. Defendant Kleinsorge was at the time of the trial
the owner of all of Oppenheim's original interest.

There is a conflict in the evidence as to many matters, but
Hewlett by his answer does not deny that the entire purchase
price of the property was $16,725, and that he paid seven
thousand dollars. Plaintiffs were conducting a real estate
business at Lodi, under the name of the Realty Company.
They acquired an interest in certain property owned by one
Beardslee, and were also trying to sell Covell's property, on
which Oppenheim held an option, on which he had paid one
thousand dollars. Breitenbucher went to Hewlett with the
proposition that the latter purchase his portion of the Beards-
lee property and also an interest in that of Covell. He wrote
a letter to Hewlett in which it was shown that a half interest
in the Beardslee property could be obtained for twenty-five
hundred dollars cash, together with the assumption of a mort-
gage interest, and that the Covell land could be had for $7725
in cash and three notes for three thousand dollars each, pay-
able in eighteen, thirty, and forty-two months, respectively,
amounting in all to $16,725 as the purchase price of the prop-
erty. The letter contained this sentence: "One half of the
above cash, $3,862.50, provided for as follows: $2500 in cash;
$1362.50 advanced on the crop. Necessary to swing the two
deals, $5000 net." Appellant contends that, as shown by this
letter, he and plaintiffs contemplated a transfer to him of a
half interest for a payment of twenty-five hundred cash, and
that the rest of the money was to be raised by an advance
on the crops. Breitenbucher explains the item in the letter
by saying that at first he and Hewlett talked about getting
money on the crop to take care of a part of the cash payment,
but that they afterwards abandoned that idea and concluded

to pay all the cash demanded, and to handle the crop as they saw fit. Hewlett said upon cross-examination that there was no discussion at the time the purchase was consummated about a reduction in the price of the property or the manner in which the item of $1,362.50 was to be paid. He simply depended, he said, upon Breitenbucher's promise that for twenty-five hundred dollars cash and certain notes he should acquire a half interest. He denied any knowledge of the note for $1,362.50 given by plaintiffs to Oppenheim, or of any payment made by or on behalf of Martin and Breitenbucher for the property. This testimony is squarely contradicted by that of Breitenbucher and Oppenheim. The former said that he and Hewlett had an agreement whereby Hewlett was to take a quarter interest for himself and to advance the money for a quarter interest for Martin and Breitenbucher, taking their note therefor; but that when the parties were ready to close the sale, Hewlett did not have sufficient money to carry out this arrangement, and that then the money was borrowed from Oppenheim on the note of Breitenbucher and Martin. This was paid on the purchase price, and Breitenbucher told Hewlett that they "would fix it up later." A few days subsequently he called upon Hewlett and sought an understanding in reference to his interest, but according to his testimony, Hewlett said: "Never mind, we just bought this on speculation; we will turn it over right away, and we will fix it up at the time we make the sale." Defendant Oppenheim corroborated Breitenbucher in many particulars. He testified that when they met on May 1, 1905, to conclude the purchase of the Covell property, Hewlett said he was going to take an interest, but did not specify what interest. Hewlett, he said, lacked just $1,362.50 of enough to pay for a half interest, so witness paid that amount for Martin and Breitenbucher, taking their note. This note was not made in Hewlett's presence. Breitenbucher, however, testified positively that Hewlett knew all about the transaction and tacitly agreed to it. He said: "I did not borrow money on the crop. Borrowed it from Mr. Oppenheim. Mr. Hewlett knew this at the time the sale was consummated. He was there at the time. I told him that we were short $1,362.50 and he said he could not furnish that amount of money so I told him that I would furnish it or get it from Mr. Oppenheim. I spoke to Mr.

Oppenheim about it and he said yes. He said he would loan us boys that amount of money to put into this deal. I think I was the first to mention the fact that he was short. We figured on the lines of getting some money on the·crop. I told him we could not get the money on the crop. I told this to Mr. Hewlett."

Appellant's first contention is that, according to the theory of plaintiffs and their evidence, an express trust was sought to be established by parol, and that such a trust being within the statute of frauds, the idea of a resulting trust was an after-thought brought before the court by an amendment to the complaint. It is true that the complaint, before its amendment, alleged an agreement for the purchase of the land, by which undivided interests were to be assigned in exactly the proportions afterwards fixed by the court in its findings on the resulting trust, but the averment of exactly the verbal agreement which, in the absence of any contract the law would imply, would not alter the, nature of the action. (*Bayles* v. *Baxter,* 22 Cal. 578; *Gerety* v. *O'Sheehan,* [9 Cal. App. 447], [99 Pac. 546] ; *Faylor* v. *Faylor,* 136 Cal. 93, [68 Pac. 482].) While it is true that a resulting trust may be defeated by parol evidence of a contract different from that implied by law, we do not agree with appellant that this is a case for the application of the rule. The agreement which, according to Breitenbucher's testimony, was made by him and Hewlett with reference to the advancement by Hewlett of money to buy a quarter interest for Martin and Breitenbucher was abandoned when Hewlett announced his inability to raise more than five thousand dollars in cash for the purchase of interests in the Beardslee and Covell properties. Yet it was proper for the court to hear evidence of such agreement in getting the history of the entire transaction. The supreme court of Nevada in *White* v. *Sheldon,* 4 Nev. 151, (292) (Ed. 1877, vols. 3-4, p. 751) said : "That no parol agreement between the parties giving to an implied trust an effect or character different from that which the law would create from the acts of the parties could be admitted in evidence in cases of this kind there is little doubt, for that would be simply creating an express trust by parol, which the law does not tolerate. But that all the facts and circumstances out of which the implied trust is raised, may be proven is clear, otherwise the trust itself could

not be established." The note given by Breitenbucher and Martin to Oppenheim at the time of the purchase of the land from Covell had not been paid when this action was tried. Breitenbucher explained that the makers of the note had expected to pay it from their share of the crops. Appellant contends that the giving of the note under the circumstances shown, indicated the intent of plaintiffs to secure their advance "either out of the proceeds of the land or of the sale thereof." Clearly they could claim none of the profits of the land unless they owned an interest in it. True, the Realty Company afterwards took an agreement for the sale of the land from the owners of the title, and it is the theory of appellant that the $1,362.50 was contributed to the purchase price to insure a consummation of the sale on May 1, 1905 (the last day of Oppenheim's option), the plaintiffs (who owned nearly all the stock of the Realty Company) expecting to recoup themselves for this amount from their commissions on that transaction and on a subsequent sale which they hoped to make for Oppenheim and Hewlett. But there is nothing to support this theory. Appellant does not assert that they disclosed any such plan to him, and it seems improbable that they should have secretly advanced the amount obtained on their note. The only basis for this deduction on his part is his assertion that he was promised a half interest for a cash payment of twenty-five hundred dollars.

The evidence is sufficient to sustain the finding that upon receiving the note Oppenheim paid the amount represented by it for and on behalf of plaintiffs, thus creating a resulting trust, because, "in order that a trust might result in their favor, it was not necessary that the consideration for the transfer should have been paid by them. It was enough if it was paid for them." (*Barroilhet* v. *Anspacher,* 68 Cal. 121, [8 Pac. 804] ; Civ. Code, sec. 853.) Appellant calls our attention to the fact that plaintiffs permitted the proceeds of the crops to be equally divided between him and Oppenheim until the time of the commencement of this action. This, according to appellant, shows that the claim by plaintiffs of an interest in the property was an afterthought. But it is not for us to weigh the evidence for the purpose of determining whether or not some acts of plaintiff might, when considered by themselves, seem inconsistent with the facts found. The court

below heard and considered all the evidence, and we cannot say that its conclusions were not justified, nor are we unmindful in so holding of the rule that the evidence necessary to establish a trust must be clear, satisfactory and convincing. (*Sheehan* v. *Sullivan,* 126 Cal. 193, [58 Pac. 543].) Appellant cites many authorities to support the contentions that "Where two or more persons purchase land in equal proportions and pay unequal sums on the purchase price, the one paying the greater portion has no resulting trust for such excess payment"; and that "a contribution of money towards the entire purchase of land is not sufficient to create a resulting trust in favor of the contributor unless the contribution is shown to have been paid for some specific part of the land." Without reviewing these authorities, we may say that many of them are so dissimilar to this case as to be of little value. Undoubtedly there are many cases in which payment of unequal sums by purchasers of property does not indicate the acquirement of unequal interests. It is equally true that resulting trusts will not be declared where it is impossible definitely to establish the proportion of the purchase price contributed by the person in whose behalf the existence of the trust is asserted. This is the doctrine of such cases as *Woodside* v. *Hewel,* 109 Cal. 486, [42 Pac. 152]; *Los Angeles etc. Co.* v. *Occidental Oil Co.,* 144 Cal. 534, [78 Pac. 25]; *Plass* v. *Plass,* 122 Cal. 11, [54 Pac. 372]; *Sheehan* v. *Sullivan,* 126 Cal. 193, [58 Pac. 543], and other cases cited by appellant. But here there is no uncertainty regarding the amount of money contributed for plaintiffs and its proportion to the entire purchase price, and, as was said in *South San Bernardino Land & Imp. Co.* v. *San Bernardino Nat. Bank,* 127 Cal. 247, [59 Pac. 700]: "It is settled law that where one pays the purchase price of land and the land is thereupon conveyed to another, the title to the land is held, under such conveyance, in trust for the person who has paid the purchase price. (Civ. Code, sec. 853.) This principle is also applied so as to make the payment of a part of the purchase money carry with it a proportionate equitable estate in the land purchased equal to the amount paid (2 Pomeroy's Equity Jurisprudence, sec. 1038.)" (See, also, *Gerety* v. *O'Sheehan,* 9 Cal. App. 447, [99 Pac. 546]; *Somers* v. *Overhulser et al.,* 67 Cal. 237, [7 Pac. 645].)

At the time of the sale certain notes secured by deed of trust were executed by Hewlett and Oppenheim. Plaintiffs were not parties to this portion of the transaction, and the contention is made that it is impossible to declare their interest in the land, owing to the existence of these notes and the trust-deed, and that, in any event, this action must fail because the trustee was not made a party to it. It is not necessary to consider the question of non-joinder, as it was not raised by demurrer or otherwise in the superior court, and it cannot be suggested for the first time in this court. A complete answer to the first contention also is the fact that it was not raised by the pleadings. Appellant by his answer averred the payment of seven thousand dollars for a half interest, and did not deny that the total consideration was $16,725. Under the pleadings and proof the court adjudged the interest of the parties to be in proportion to the amount contributed by each (either in money or in notes) leaving unaffected any lien that a stranger to this record might have on account of the balance of the purchase price. The share of plaintiffs is as much affected *pro tanto* by the trust-deed as are the shares of appellant and of Oppenheim's successor in interest, although the part of the purchase price which was advanced for plaintiffs has been paid to Covell, the trustee, in cash, while the other shares were partly bought by the notes to secure which the trust-deed was executed. We cannot see how the judgment, therefore, adds anything to the burdens under the trust-deed of either the appellant or Oppenheim's successor.

There are no other matters in the record which seem to require attention, and, in accordance with the views expressed in the foregoing discussion, the judgment and order from which appeals have been taken are affirmed.

Henshaw, J., and Lorigan, J., concurred.