[Sac. No. 4631. In Bank.—March 1, 1933.]

FRANK L. WILLIAMS, Respondent, v. LOLA C. W. STILLWELL et al., as Executrices, etc., Appellants.

Robert H. Schwab and Charles J. Hasman for Appellants.

Ralph H. Lewis and George L. Popert for Respondent.

CURTIS, J.—Plaintiff brought this action to quiet his title as against the defendants to certain real property described in his complaint and situated in the county of Sacramento. Defendants answered denying plaintiff's title. A trial was had before the court, and at the conclusion thereof the plaintiff was given leave to file an amended complaint to conform to the proofs. Thereupon plaintiff filed such a pleading wherein he restated his cause of action in his original complaint to quiet title and added a second cause of action setting up an executed parol gift of said real property from his mother. Thereupon the court made findings and rendered judgment in favor of the plaintiff upon the cause of action set forth in said amended complaint based upon an executed parol gift of said real property. From this judgment the defendants have appealed.

Plaintiff is the father of the two defendants, Lola C. W. Stillwell and Hazel K. W. Shepard. Said defendants are sued as the executrices of the last will and testament of Mary V. Graham, deceased. Plaintiff was the son of Mrs.

M. C. Williams, who was the owner of 800 acres of land in Sacramento County. Besides the plaintiff, Mrs. Williams was the mother of Sarah A. Graham and Mary V. Graham, children by a former marriage. Plaintiff was married in 1890 and went to live with his mother on said 800-acre tract of land. He testified, and there is no contradiction to his testimony, that during that year and shortly after his marriage, his mother verbally gave him a government quarter-section out of her larger tract of land, being the land now in dispute, provided he would build a house and make his home thereon. He immediately built a small house on said 160-acre tract, and he and his wife moved thereon, and lived there until her death some six years thereafter. In addition to said dwelling-house, he built on said land outbuildings, a barn, pumping plant and other structures. He enclosed some 30 acres in a pasture. During this time the two defendants were born. After the death of his wife he ceased to make his home on said land for a period of ten years. During his absence he leased said land for six years and received the rental therefrom. The place remained idle during the remaining four years for the reason that he was unable to find a tenant. In the meantime he had married a second time, and in the year 1906 returned to said land and lived thereon with his wife from that time on to the trial of this action. His mother with her two daughters, the Graham sisters, resided on the old home place adjoining the land in dispute. She never executed any deed to said 160-acre tract in plaintiff's favor. In 1900 she deeded to her two daughters the entire 800 acres, which included the 160 acres claimed by plaintiff. She continued to live with them in the old home place until her death in 1915. Sarah A. Graham died in 1920, and by will devised all property owned by her to her sister. The latter died in 1929, leaving a last will in which the two defendants were named as the executrices thereof, and were thereafter duly appointed and qualified as such executrices. After their appointment they sought to dispossess the plaintiff of said 160-acre tract of land; whereupon he instituted this action to establish his ownership thereof. As stated above, the trial court rendered judgment in his favor.

It is first contended by defendants that plaintiff's right to said land, if he ever had any, was barred by laches;

that he waited until after the death of his mother and the two Graham sisters before taking any legal steps to establish his ownership of said land, these three being the only persons beside himself who knew the true facts of the transaction between plaintiff and his mother regarding the gift of said land.

It is one of the aphorisms of equity that it abhors stale claims. (10 Cal. Jur., p. 521.) Unless a litigant can show that he acted with reasonable diligence in the assertion of his equitable rights, a court of equity will turn a deaf ear to his plea. In this case almost forty years elapsed between the time plaintiff alleges his mother made him a verbal gift of said real property and the commencement of this action. Ordinarily such delay would defeat any claim to relief in a court of equity. But there exists in this case peculiar and unusual circumstances which, in our opinion, take this case out of the general rule. The plaintiff was put in possession of the land in controversy by his mother under a promise to give the land to him if he would build a home thereon. He complied with this condition. He remained in possession of said land during the life of his mother and after her death during the life of his two sisters except as stated above. It appears from the evidence that his right to the possession of said land and to enjoy the fruits thereof was never questioned during the lifetime of his mother and sisters, and not until the defendants acquired some color of right to said land was there any interference made by anyone to his quiet and peaceable enjoyment and possession of said land. It does not appear that there was any discussion between plaintiff and his mother or sisters regarding a deed to said land. Plaintiff never asked for a deed, and the other parties never refused to execute one. From the conduct of the parties in this regard, it may well be inferred that the plaintiff did not think it necessary that he should have any written evidence of his ownership of said land, deeming the word of his mother, taken in conjunction with her subsequent conduct in permitting him to occupy and enjoy said land as his own during the years of her life, sufficient evidence of his ownership without the formal written documents ordinarily required by law to invest one with the title to real property. Under these circumstances, we do not think that the plea of

laches is well taken. This action probably never would have been brought had the defendants pursued toward the plaintiff the same attitude which his mother and the Graham sisters had followed. It was only when defendants attempted to interfere with plaintiff's possession of said real property which he had enjoyed uninterruptedly for forty years that the latter found it necessary to take legal steps to protect his rights. The following authorities sustain our conclusion: *Barroilhet* v. *Anspacher*, 68 Cal. 116 [8 Pac. 804), and *Liebrand* v. *Otto*, 56 Cal. 242.

■ It is next contended that plaintiff has mistaken his remedy and that he should have brought an action to enforce specific performance rather than the action he did. A number of authorities are cited by defendants which hold that an action for specific performance will lie in behalf of one claiming real property under a parol executed gift. Defendants concede that had plaintiff brought his action in specific performance he would have failed as the promisor, his mother, had died. The logic of defendants' argument is that specific performance was plaintiff's only remedy, but as his mother is dead, even this remedy is denied plaintiff and he is left remediless. We cannot subscribe to this doctrine. Defendants have cited us to no authority which holds that the remedy pursued by plaintiff is not applicable. Had his mother been alive and had she refused to perform her promise, plaintiff, if the facts had warranted it, could have compelled her to perform. Her death has not deprived him of his right to perfect whatever title he had to said real property. We think the remedy pursued by him is a proper one. He has set forth in his amended complaint the precise facts upon which he bases his ownership of said land. The trial court found these allegations to be true and gave judgment in his favor, decreeing plaintiff to be the owner of said land, and that defendants held the record title to said land in trust for the plaintiff and directing that they convey the same to the plaintiff. We think this proceeding a proper one and the judgment entered a valid judgment.

■ Defendants next contend that there was a failure on plaintiff's part to prove payment of taxes on said real property and that he held adverse possession thereof during the time he claimed to be the owner thereof. These acts would

become essential to plaintiff's recovery provided he relied exclusively on title by adverse possession. He is claiming title primarily under a gift to him by his mother and not by adverse possession. However, the plaintiff testified that he paid the taxes on said real property during all the years he was in possession thereof until the year 1927, when the defendants assumed to be owners of said property under the will of Mary V. Graham, deceased. He said that during the first six years of his occupancy of said real property he paid the taxes thereon direct to the county assessor, and thereafter he repaid them either to his mother or to his sisters in money or by labor, after they had paid them to the tax collector of Sacramento County. Defendants introduced in evidence the official tax receipts showing that the taxes on said real property had been paid either by Mrs. Williams, or her daughters, the Graham sisters, from 1890 to 1927, except a year or so when the taxes were paid by a mortgagee of said lands. These original receipts have been forwarded to this court and are now before us. They tend to disprove plaintiff's statement in so far as he testified that he paid the taxes for the first six years of his occupancy of said real property. They may be in conflict with his testimony that he paid the taxes up to the year 1927, but not necessarily so. His mother and sisters may have paid said taxes during those years in the first instance to the county tax collector, and if he thereafter reimbursed them for such payments either in money or in labor, this was in effect a payment by him. (*Gray* v. *Walker*, 157 Cal. 381 [108 Pac. 278].) ▪ As to the question of adverse possession, the evidence shows that the 160 acres of land which plaintiff lays claim to were enclosed with a fence on three sides thereof. On the fourth side said tract joined land formerly owned by his mother and which was a part of her original 800-acre tract. Between the 160 acres and the land adjoining it on this fourth side there was left an unplowed and uncultivated strip of land separating the two tracts of land, which to a certain extent marked the dividing line between these two tracts. While this uncultivated strip of land cannot be considered a "substantial enclosure" in the sense that these words are used in section 325, Code of Civil Procedure, yet there is evidence that the plaintiff cultivated the 160 acres up to this unplowed

strip. This evidence is sufficient, if accepted by the trial court, to prove, in connection with his payment of taxes, adverse possession under subdivision 2 of said section 325 of the Code of Civil Procedure. The question of the payment of taxes and of the cultivation of the land were questions of fact to be decided by the trial court. There was sufficient evidence upon each of these issues to support the findings of the trial court favorable to the plaintiff. The plaintiff, having shown that he entered into possession of said real property under a parol gift thereof from his mother, and having further shown that he was in adverse possession of said real property for five years and over, and that during said period of time he paid all taxes assessed against said real property, became the owner of the legal title to said real property by adverse possession. (*Bakersfield T. H. Assn.* v. *Chester*, 55 Cal. 98, 102, 103.) Plaintiff's claim of title, therefore, is supported not only by the parol gift from his mother, but also by adverse possession of said real property.

There are other questions raised by the defendants, but they possess so little merit that the mere statement of them would prove their own refutation. No useful purpose could be accomplished by any detailed discussion of them. We find no error in the record and are of the opinion that the judgment should be affirmed. It is so ordered.

Preston, J., Shenk, J., Langdon, J., Thompson, J., and Seawell, J., concurred.