Willie DIXON, Sr., et al., Appellants,

v.

E. M. HUGGINS, III, et al., Appellees.

No. 5240.

Court of Civil Appeals of Texas, Waco.

May 17, 1973.

J. Leonard Gotsdiner, Houston, for appellants.

Pollan & Nicholson (John T. Nicholson), Rosenberg, for appellees.

Henry E. Doyle, George D. Gordon, Houston, for intervenors.

VIC HALL, Justice.

Plaintiffs-appellants, Willie Dixon, Sr., and Willie Dixon, Jr., brought this action in trespass to try title against E. M. Huggins, III, to recover title to approximately 22 acres of land in Fort Bend County.

Suit was filed in August, 1965. Plaintiffs alleged, in effect, that Huggins was claiming an undivided ⅖ths interest (66 acres) in a tract of approximately 165 acres; that he in fact owned only an undivided 44 acres therein; and that, together, plaintiffs owned the balance of the tract. Huggins answered that he claimed not only the ⅖ths interest in the 165 acres as pleaded by plaintiffs, but that he claimed additional particularized undivided interests in the tract.

The heirs of Mary Dixon Webb (hereinafter referred to as "Webb Heirs") intervened, claiming an undivided ⅛th interest in the 165 acres. The heirs of Frances Dixon Rogers and Charles Dixon ("Rogers-Dixon Heirs") intervened, claiming altogether an undivided ⅛th interest in the tract. The heirs of Anna Dixon Fleming ("Fleming Heirs") intervened, claiming an undivided 1/36th interest therein.

Trial was to the court without a jury, in May, 1972. Huggins and the intervenors admitted by stipulation that, subject to proof by them of their respective claims, the plaintiffs "owned all of the remaining interest" in the 165 acres. After the hearing, judgment was rendered awarding the following undivided interests in the property to the parties:

| | |
|---|---|
| Plaintiffs: | 17/45ths |
| Huggins: | 77/180ths (2/5ths + 1/36th). |
| Webb Heirs | 1/18th |
| Rogers-Dixon Heirs | 1/9th |
| Fleming Heirs | 1/36th |

Plaintiffs do not complain about the award of the 1/36th interest to Huggins (which the record shows he purchased before trial from the Fleming Heirs), nor about the 1/18th interest to the Webb Heirs. However, in three rather general points of error, they challenge the award of the ⅖th interest, instead of 44 acres, to Huggins, and the awards to the Rogers-Dixon Heirs and the Fleming Heirs. Plaintiffs argue that there is no probative evidence in the record to support the questioned awards, and that there are no legal principles upon which the awards may be based.

■ Findings of fact and conclusions of law were neither requested nor filed. We must, therefore, presume that all necessary fact-findings were made by the trial court in support of the judgment. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 613 (1950).

■ As noted earlier, only the legal sufficiency of the evidence is challenged by plaintiffs. Thus, if the record contains any probative evidence that supports the judgment on any theory of law applicable

to the case, then the judgment should not be disturbed on appeal. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S. W.2d 73, 84 (1939). And, in deciding a "no evidence" question, we may consider only the evidence and the reasonable inferences therefrom that support the judgment, and we are required to disregard all evidence and inferences to the contrary. Brown v. Frontier Theatres, Inc., (Tex. Sup., 1963) 369 S.W.2d 299, 301.

The record shows that the common source of title for all of the parties are Louis Dixon, Sr., and wife, Kate Ann Dixon. They purchased the property in question as their community property in 1893. Nine children were born to them. None were adopted. Their children were:

1. Louis Dixon, Jr.

2. Minnie Dixon, whose last name is now Warner. She is a widow and lives in Houston.

3. Eliza Dixon, whose last name is now Griffin. She is a widow living in Houston.

4. Ruffin Dixon.

5. Julia Dixon.

6. Charles Dixon, who married Mary Boyd. Both died intestate.

7. Anna Dixon, who married George Fleming. Both died intestate.

8. Mary Dixon, who married Tom Webb. Both died intestate.

9. Frances Dixon, who married Robert Rogers. Both died intestate.

Between 1915 and 1920, Kate Ann died intestate. Her husband and all of the children survived her. By reason thereof, each child became the owner of an undivided ⅑th interest in the property. Art. 2469, Vernon's Ann.Rev.Civ.St., 1911.

On October 1, 1929, the property in question was conveyed to Ruffin Dixon by his father and by all of his brothers and sisters except Mary Dixon Webb. The deed recited a consideration of $3,000 cash and the assumption by Ruffin of an indebtedness in the amount of $2,000 against 25 acres of the tract. Later, on March 9, 1961 Ruffin executed, and caused to be filed in the deed records of Fort Bend County, an affidavit in which he stated:

"My name is Ruffin Dixon, and I live in Harris County, Texas, and I am the same Ruffin Dixon that took a Deed on the 1st day of October, 1929, from Anna Fleming, whose maiden name was Anna Dixon, and her husband, George Fleming, as well as others. That was in 1929, and the purpose for them making the Deed to me was for me to obtain some kind of a crop loan, as the government was making loans on crops or to make crops at that time, and they made me the Deed so that I could get the loan and make the crop. I was living on the property at that time, and they were just trying to help me out. The property was not to be mine, and I did not give them anything for it, nor was I suppose to give them anything for it, but they were just helping me to make a crop and pay up my debts. That is all there was to it, and that is right. Whatever the Fleming heirs have in the property is still there, and the several children have their interest just the same as the Webbs have there. This Deed didn't mean anything. Now I did get the interest of some other people in that Deed, and, of course, I am claiming that interest, but I am not claiming anything against the Fleming heirs and I am making a Deed to them for their interest, and I want to get it straightened out about this Deed that I got in October, 1929, and this pretty well takes care of that."

■ Plaintiffs are the adopted children of Ruffin Dixon. Ruffin died in October, 1961. Plaintiffs claim, here, as his heirs and devisees. Ruffin's affidavit was admissible in evidence under the rule that permits the statements of a decedent af-

fecting title to land to be received against an heir or devisee claiming the decedent's rights to that title. See 2 McCormick And Ray, Texas Law of Evidence (2d Ed.), p. 70, Sec. 1177.

In our opinion the statements in the affidavit support determinations by the trial court that the deeds to Ruffin from his brothers and sisters were made as an accommodation to him and conveyed only bare legal title; and that a trust relationship was intended and created by the conveyances under which the grantors retained the equitable title and beneficial interest in the land while Ruffin held the legal title in trust for them. See 57 Tex.Jur.2d 447, Trusts, Sec. 57. Such conclusions would sustain the awards to the Fleming Heirs and the Rogers-Dixon Heirs under well-established equitable principles. See 22 Tex.Jur.2d 579, Equity, Sec. 35.

The will of Louis Dixon, Sr., was executed by him on September 28, 1928. It was admitted to probate in the County Court of Fort Bend County in May, 1932. He devised whatever interest he owned in the property to Ruffin, Minnie, Julia, Eliza and Louis, Jr., "share and share alike."

The parties stipulated that on April 16, 1957, "Minnie Dixon Warner, a widow, and Eliza Dixon Griffin, a widow," owned an "undivided ⅖ths interest in the land in question" by reason of "a regular chain of title and by inheritance." On that day, "in consideration of Ten ($10.00) Dollars and other good and valuable consideration" Minnie and Eliza conveyed to Ruffin by general warranty deed:

"All our right, title and interest in and to that certain tract or parcel of land lying and being situated in Fort Bend County, Texas and more particularly described as follows, to-wit:

"All that certain tract of land situated on the E. side of the Brazos River in Fort Bend County, part of the C. Fulshear League and containing 110 acres of land and bounded as follows:

(Here, the property is described by metes and bounds, ending with the words "containing 110 acres of land.")

On the 25th day of April, 1957, Ruffin Dixon and wife Julia B., in consideration of $10.00 and other good and valuable consideration, executed a general warranty deed to the defendant Huggins in which they made the following conveyance:

"An undivided Forty-four (44) acres of land out of a 110 acre tract of land situated in the C. Fulshear League, Abstract No. 29, Fort Bend County, Texas, more particularly described as follows, to-wit:

"All that certain tract of land situated on the E. side of the Brazos River in Fort Bend County, part of the C. Fulshear League and containing 110 acres of land and bounded as follows:

(Here follows the identical metes and bounds description contained in the deed to Ruffin from Minnie and Eliza.)

"It is the intention of Grantors to convey to Grantee the undivided 44 acres of land conveyed by Minnie Dixon Warner and Eliza Dixon Griffin to Ruffin Dixon by deed dated April 16, 1957, and recorded in the Deed Records of Fort Bend County, Texas, to which refer in aid hereof."

Prior to 1965, it was believed by everyone who had ever dealt with the property that it contained 110 acres as called for in its description. However, in that year a survey revealed that the field notes which have always been used to describe the property, and which are still used to do so, enclosed 165 acres.

Although we shall not detail it, there is evidence in the record that in his dealings with his sisters and Huggins, Ruffin was not acting for himself, but was acting on behalf of Huggins with Huggins' knowledge and permission and with Huggins' money. He was, therefore, Huggins' agent in the transactions. Thompson v. Schmitt, 115 Tex. 53, 274 S.W. 554, 557.

Property that is purchased by an agent in his own name, but with the principal's money, is held in trust for the benefit of the principal. 2 Tex.Jur.2d 560, Agency, Sec. 112. The deed from the sisters to Ruffin clearly conveys all of their interest in the entire tract to him. Presumably, as Huggins' agent, Ruffin intended to convey that interest in his deed to Huggins. In any event, it is axiomatic that "equity regards as done that which ought to be done"; 22 Tex.Jur.2d 581, Equity, Sec. 39; and the trial court did not err in awarding that interest to Huggins.

Appellants' points and contentions are overruled. The judgment is affirmed.