July 5, 1991

## IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

MARIAN ALDAN-PIERCE, ) APPEAL NO. 89-003
) CIVIL ACTION NO. 86-86
 Plaintiff/Appellee, )
)
 vs. ) OPINION
)
LEOCADIO C. MAFNAS, )
)
 Defendant/Appellant. )
_____)

Argued and Submitted July 30, 1990

Counsel for Defendant/Appellant: Theodore R. Mitchell, Esq.
P.O. Box 2020
Saipan, MP 96950

Counsel for Plaintiff/Appellee: Donald C. Williams, Esq.
Marcia K. Schultz, Esq.
Carlsmith, Ball, Wichman,
Murray, Case, Mukai &
Ichiki
P.O. Box 241 CHRB
Saipan, MP 96950

Counsel for amicus curiae
 Saipan Bankers Association:[1] Steven L. Mayer, Esq.
Kent Walker, Esq.
Howard, Rice, Nemerovski,
Canaday, Robertson & Falk
Three Embarcadero Center
7th Floor
San Francisco, CA 94111

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

DELA CRUZ, Chief Justice:

 We are presented in this appeal with the issue of whether the

128

exercise of an option agreement ("option") to purchase real property in the Commonwealth violated the land alienation restriction of Article XII of the NMI Constitution ("Article XII") if persons who are not of Northern Marianas descent thereby acquired an equitable fee interest in the land.[2]

## I.

The defendant, Leocadio C. Mafnas ("Mafnas"), appeals a summary judgment order compelling specific performance of the option. Aldan-Pierce v. Mafnas, Civil Action No. 86-86 (N.M.I. Tr. Ct. Oct. 15, 1986) (judgment). Finding no genuine issue of material fact, the Commonwealth Trial Court[3] concluded that the option did not violate Article XII and was, therefore, enforceable. Aldan-Pierce v. Mafnas, 2 CR 855 (C.T.C. 1986).[4]

### A. Procedural and Factual Background

Mafnas, a person of Northern Marianas descent, owns in fee simple Lot 008 B 25, situated at San Roque, Saipan. This property contains an area of 8,708 square meters.

Mafnas and Antonia C. Villagomez ("Villagomez")--who is also of Northern Marianas descent--executed the option on September 15,

---

[2]Article XII--the pertinent portions of which are set forth in part IV, infra--restricts acquisition of permanent and long-term interests in real property within the Commonwealth to persons of Northern Marianas descent.

[3]Since renamed the "Superior Court of the Commonwealth of the Northern Mariana Islands" pursuant to the Commonwealth Judicial Reorganization Act of 1989, 1 CMC §§ 3101-3404. See 1 CMC § 3201.

[4]The court also considered and rejected claims of undue influence and unconscionability that have not been raised in this appeal.

129

1984. Mafnas agreed to sell "a certain portion of Lot No. 008 B 17"[5] to Villagomez or her designee by warranty deed. The option, which became effective upon execution, was to remain in effect until July 7, 1985.

The option consideration of $500 was paid to Mafnas by Brian McMahon ("McMahon"), who is not of Northern Marianas descent. As directed by Randall T. Fennell ("Fennell")--who is also not of Northern Marianas descent--Villagomez[6] timely exercised the option by notifying Mafnas in writing that she wished to purchase the property. This notice (dated July 6, 1985) requires Mafnas to obtain a certificate of title to the property and to deliver it and a warranty deed to Villagomez, at which time the purchase price of $10 per square meter would be paid.

Mafnas refused to comply.

Villagomez subsequently assigned her interest under the option to Marian Aldan-Pierce ("Aldan-Pierce"), who filed the present action for specific performance on March 4, 1986.

In his answer to Aldan-Pierce's complaint, Mafnas alleged, inter alia, that Villagomez acted as Fennell and McMahon's agent-- and that Fennell engaged her as his agent to acquire for himself and McMahon a permanent and long-term interest in real property in violation of Article XII.

---

[5]The portion which Mafnas owns is Lot 008 B 25.

[6]Villagomez was, at the time, employed by Fennell as his secretary. Fennell and McMahon are attorneys.

130

B. The Superior Court Ruling

The trial court concluded that Villagomez was Fennell and McMahon's agent, and that they had control over her to (1) direct her to exercise the option, (2) turn over their purchase money to Mafnas after he executed a warranty deed to her, and (3) record the deed showing fee simple title in her name. However, the court determined that once Villagomez subsequently leases the property to Fennell and McMahon (as they had previously agreed) the agency relationship will terminate and a lessor-lessee relationship will commence:

> The "control" of the principal over the agent to which [Mafnas] bases his theory vanishes upon execution of the lease. There is no substance or merit to [Mafnas'] argument that the prior agency or fiduciary relationship continues and supercedes the lease agreement.

Aldan-Pierce v. Mafnas, 3 CR at 864. Therefore, the court ruled, the option did not violate Article XII, and was enforceable.

Mafnas appeals.[7]

## II.

We review a grant of summary judgment de novo. MPLC v. Kan Pacific Saipan, Ltd., No. 90-014 (N.M.I. Nov. 21, 1990) (amended opinion). If there is no genuine issue of material fact, the analysis shifts to whether the substantive law was correctly

---

[7]This appeal was initially taken to the Appellate Division of the District Court for the Northern Mariana Islands, which affirmed the trial court ruling. Aldan-Pierce v. Mafnas, 3 CR 326 (D.N.M.I. App. Div. 1988). Mafnas subsequently appealed to the Ninth Circuit Court of Appeals. That court granted Mafnas' motion to dismiss the appeal on March 29, 1990. Mafnas filed an appeal of the trial court decision with this Court on May 15, 1989. Part III, infra, discusses the question of our jurisdiction over this appeal.

131

applied. *Id*.

The sole issue Mafnas raises on appeal concerns the constitutional validity of the option. He contends that when Villagomez exercised the option, Fennell and McMahon acquired a freehold (equitable fee) interest in Commonwealth real property. This, he argues, violates Article XII.[8]

### III.

Before reaching the merits, we must address the threshold question of our jurisdiction.

Aldan-Pierce has moved to dismiss this appeal on the ground that we lack jurisdiction. She contends that only the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") has jurisdiction to hear the appeal.

We note that this appeal was pending before the Ninth Circuit on May 2, 1989, the effective date of the Commonwealth Judicial Reorganization Act of 1989, 1 CMC §§ 3101-3404 ("Act"). The Act transferred to this Court appellate jurisdiction over all Commonwealth cases pending before both the Appellate Division of the District Court for the Northern Mariana Islands ("Appellate Division") and the Ninth Circuit. 1 CMC § 3109(b).

In *Wabol v. Villacrusis*, No. 89-005 (N.M.I. Dec. 11, 1989), we examined the validity of 1 CMC § 3109(b). We concluded that the statute violated neither the Covenant to Establish a Commonwealth

---

[8]Mafnas initially raised (but subsequently abandoned) an issue concerning imposition of a sanction by the Appellate Division of the District Court for the Northern Mariana Islands.

of the Northern Mariana Islands in Political Union with the United States of America, reprinted in CMC vol. 1 at B-101 and in 48 U.S.C.A. § 1681 note (West 1987) ("Covenant"), nor 48 USC § 1694b(c), the federal statute empowering the Ninth Circuit to hear appeals from Appellate Division rulings.

Subsequent to our Wabol ruling, the Ninth Circuit rendered a contrary decision concerning the validity of 1 CMC § 3109(b):

> [A]lthough the Act by its terms applies retroactively to appeals from local trial courts which were pending in the appellate division of the district court when it was passed . . . NMI is without power under the Covenant to divest [the Ninth Circuit] of jurisdiction over appeals properly filed from a final order of the appellate division of the district court entered before passage of the Act.

Wabol v. Villacrusis, 908 F.2d 411, 419 (9th Cir. 1990) (amended opinion).

We are faced with the question of whether we should defer to this decision. For several reasons, we decline to do so.

First, we note that the appeal of this case to the Ninth Circuit was dismissed upon Mafnas' voluntary motion. The Appellate Division subsequently issued a mandate--based on its earlier decision[9]--to the Commonwealth Superior Court. When challenged on appeal, the mandate was vacated by the Ninth Circuit, which ruled that the Appellate Division lacked jurisdiction over the appeal after May 2, 1989. Mafnas v. United States District Court for the Northern Mariana Islands, 919 F.2d 101 (9th Cir. 1990). In its decision, the Ninth Circuit recognized the instant appeal taken by

---

[9]See n.7, infra.

Mafnas to this Court. Recently, the Ninth Circuit considered an appeal from our issuance of a writ of prohibition to the Superior Court[10] ordering it to disregard the Appellate Division's mandate. In that decision, Mafnas v. Superior Court of the Commonwealth of the Northern Mariana Islands, No. 90-16078 (9th Cir. June 18, 1991) (1991 WESTLAW 102977), the Ninth Circuit dismissed the appeal as moot because of its earlier decision to vacate the Appellate Division's mandate; the court again recognized the instant appeal to this Court.

Second, we take judicial notice of the fact that the Ninth Circuit's ruling in Wabol is the subject of a petition for reconsideration.

Third, our Wabol ruling has been appealed to the Ninth Circuit pursuant to Covenant Section 403.[11] That appeal has not been decided. Although the Ninth Circuit's Wabol ruling notes that this Court's decision need not be accorded full faith and credit (since it is subject to review by that court) the Ninth Circuit has not yet reviewed our decision.

Thus, we shall follow our decision in Wabol and consider the appeal in this case. 1 CMC § 3109(b). Aldan-Pierce's motion to dismiss for lack of jurisdiction is denied.

---

[10]Mafnas v. Superior Court, Orig. Action No. 90-003 (N.M.I. June 28, 1990).

[11]Covenant Section 403 provides that the Ninth Circuit has jurisdiction over appeals from our decisions involving federal questions for the first fifteen years of this Court's existence. See Sablan v. Iginoef, No. 90-008 (N.M.I. Nov. 13, 1990) (order concerning transmittal of appeal to the Ninth Circuit).

134

## IV.

The issue confronting us relates to Covenant Section 805 ("Section 805"), in addition to Article XII. In analyzing the validity of the exercise of the option, it is necessary to first examine Section 805, which requires that the Commonwealth regulate the alienation of permanent and long-term interests in real property to restrict acquisition of such interests to persons of Northern Marianas descent. Next, we will examine Article XII to determine how Section 805 was implemented. We shall thereafter analyze the facts of this case to determine whether the trial court ruled correctly.

A. Section 805

Section 805 provides, in pertinent part:

> Except as otherwise provided in this Article and notwithstanding the other provisions of this Covenant, or those provisions of the Constitution, treaties or laws of the United States applicable to the Northern Mariana Islands, the Government of the Northern Mariana Islands, in view of the importance of the ownership of land for the culture and traditions of the people of the Northern Mariana Islands, and in order to protect them against exploitation and to promote their economic advancement and self-sufficiency:
>
> > (a) will until twenty-five years after the termination of the Trusteeship Agreement, and may thereafter, regulate the alienation of permanent and long-term interests in real property so as to restrict the acquisition of such interests to persons of Northern Marianas descent . . . .

(Emphasis added.)[12]

---

[12]Covenant Section 105 provides, inter alia, that Section 805 "may be modified only with the consent of the Government of the United States and the Government of the Northern Mariana Islands."

"[I]t will be entirely up to the Government of the Northern Marianas and the people of the Northern Marianas to determine the precautions which they will take to prevent their land from being alienated." Marianas Political Status Commission, Section-by-Section Analysis of the Covenant 117 (1975).[13] Definition of the operative terms and phrases of Section 805--including "long term interests in real property," "acquisition," and "persons of Northern Mariana Islands descent"--was left to the NMI as its responsibility in implementing the provision. Id.

## B. Article XII

The sole implementing vehicle for Section 805 is Article XII, which became operative when the NMI Constitution went into effect on January 9, 1978.

We now examine each of the original provisions[14] of Article XII. Section 1 provides:

> The acquisition of permanent and long-term interests in real property within the Commonwealth shall be restricted to persons of Northern Marianas descent.

Section 2 provides:

> The term acquisition used in section 1 includes acquisition by sale, lease, gift, inheritance or other means. A transfer to a spouse by inheritance is not an acquisition under this section. A transfer to a mortgagee by means of a foreclosure on a mortgage is not an acquisition if the mortgagee does not hold the permanent or long-term interests in real property for

---

[13]The Marianas Political Status Commission negotiated the Covenant.

[14]Certain provisions of Article XII were amended in 1985, after the option at issue was exercised. None of the amendments have bearing upon our analysis.

more than five years.[15]

Section 3 provides:

> The term permanent and long-term interests in real property used in section 1 includes freehold interests and leasehold interests of more than forty years[16] including renewal rights.

Section 4 provides:

> A person of Northern Marianas descent is a person who is a citizen or national of the United States and who is of at least one-quarter Northern Marianas Chamorro or Northern Marianas Carolinian blood or a combination thereof or an adopted child of a person of Northern Marianas descent if adopted under the age of eighteen years. For purposes of determining Northern Marianas descent, a person shall be considered to be a full-blooded Northern Marianas Chamorro or Northern Marianas Carolinian if that person was born or domiciled in the Northern Mariana Islands by 1950 and was a citizen of the Trust Territory of the Pacific Islands before the termination of the Trusteeship with respect to the Commonwealth.

Section 5 sets forth requirements for corporations to qualify as a "person of Northern Marianas descent." Article XII, § 6 provides, in pertinent part, that "[a]ny transaction in violation of section 1 shall be void ab initio."

Clearly, under Article XII only persons of Northern Marianas descent may acquire permanent and long-term interests in real property in the Commonwealth. The only exceptions are (a) transfers to a spouse (who is not of Northern Marianas descent) by inheritance in certain circumstances, and (b) transfers to a mortgagee (such as a bank or lending institution) by foreclosure on a mortgage if the mortgagee does not hold an interest in the

---

[15]Extended to ten years by amendment adopted in 1985.

[16]Extended to fifty-five years by amendment adopted in 1985.

137

property for more than a specified period. Article XII, § 2.

In analyzing the option at issue, we will consider the intent and purpose of Section 805 and Article XII.[17]

V.

The parties agree that there is no genuine issue of material fact concerning the constitutional validity (or invalidity) of the exercise of the option. We concur. A review of the affidavits and documents supporting and opposing Aldan Pierce's motion for summary judgment confirms that the material facts are not in dispute.

A. The Options

The idea of an option to purchase or lease the San Roque property was apparently conceived before August 1, 1980, by Fennell and other persons who are also not of Northern Marianas descent. Declaration of Randall T. Fennell (August 27, 1986) (hereafter "Fennell Affidavit"). The record reveals that no fewer than five options preceeded the option at issue in this appeal.

The first, dated August 1, 1980, was negotiated by one Howard Luke. Fennell Affidavit at 1. This option, executed by Mafnas, as "Owner", and Luke and Fennell, as "Buyers", states, in part:

. . . .

> 2. **Agreement to Sell or Lease.** Owner agrees to convey in fee simple absolute said property, and all of it, or any portion thereof required by Buyers, to Buyers,

---

[17]We note that Aldan-Pierce does not challenge the validity of either provision under the U.S. Constitution. Cf. Wabol v. Muna, 2 CR 963 (D.N.M.I. App. Div. 1987), in which the Appellate Division considered and rejected constitutional challenges to both provisions.

138

or their designee pursuant to the terms of this agreement, provided, however, that if at any time from the execution of this agreement it is not legal under the laws and Constitution of the Commonwealth of the Northern Mariana Islands for Buyers to hold in fee interest, then Owner agrees to convey said property in fee simple to any person designated by Buyers who has the legal capacity to own said property in fee simple absolute, or to lease said property to Buyers for as long a term as is legally permissible.

. . . .

This option expired, unexercised, on April 30, 1981.[18]

A second option was executed on May 1, 1981, by Mafnas, as "Owner", and McMahon and Fennell, as "Buyers." It is essentially the same as the first option, containing a paragraph identical to the provision quoted above. This option expired, unexercised, on October 31, 1981.

A third option was executed on April 7, 1982, again by Mafnas, as "Owner", and McMahon and Fennell, as "Buyers." Except for the dates, it is essentially the same as the first and second options. This option expired, unexercised, on June 7, 1982.

A fourth option was executed on July 13, 1983, by Mafnas, as "Owner," and Fennell as "Buyer." This option was for a forty-year lease.[19] It expired, unexercised, on July 12, 1984.

A fifth option--again, to lease the property--was executed by Mafnas, as "Owner," and Villagomez, as "Buyer," on July 7, 1984, before the fourth option had expired. Other than a difference in

---

[18]We note that Article XII would clearly have been violated if Mafnas had conveyed his fee interest in the property to Luke and Fennell under this option.

[19]We note that had Mafnas leased the property to Fennell under this option, Article XII would not have been violated.

139

consideration and a reduction in the area to be leased, this option was essentially the same as the fourth option. It expired, unexercised, on July 7, 1985.

A sixth option--executed on September 15, 1984, before the fifth option expired--is the option the exercise of which is at issue. This option enabled Villagomez to purchase Mafnas' fee interest to the entire property. As noted above, Villagomez exercised the option on July 6, 1985, a day before it was to expire.

According to the option, Villagomez may assign all or any part of her rights, duties, and obligations. She assigned her rights to Aldan-Pierce on January 13, 1986, "for $10.00 . . . and other good and valuable consideration . . . ." Excerpts of Record at 8.

B. The Affidavits

According to Villagomez:

 . . . .

 2. In 1984, I was approached by Mr. Brian McMahon and Mr. Randall Fennell, who asked if I would be interested in holding title to property in San Roque owned by Leocadio Mafnas.

 3. Under my agreement with Mr. Fennell and Mr. McMahon, they would provide the money for an option agreement between me and Mr. Mafnas. If the option was exercised, they would provide the money to purchase the property. I, in return, would grant them a lease for the maximum term permitted by law for minimal consideration.

 . . . .

Affidavit of Antonia C. Villagomez (July 25, 1986) (hereafter "Villagomez Affidavit").

According to Fennell, he and Mafnas (who was advised by a "Mr.

140

Magofna") negotiated the option at issue. Fennell Affidavit at 2. Fennell also stated that he and McMahon had an oral agreement with Villagomez (and subsequently with Aldan-Pierce) to "provide the money for the land purchase in return for a lease for the maximum length allowed by law." Id. "Ms. Villagomez left negotiation of the options to Mr. McMahon and I." Id.

McMahon echoed Fennell's statement regarding their agreement with Villagomez. Declaration of Brian T. McMahon (Aug. 27, 1986) (hereafter "McMahon Affidavit").

According to Mafnas, "both Mr. Fennell and Mr. McMahon[] made it clear to me that the . . . Option Agreement, although it was to be executed by Antonia C. Villagomez, was for the sole benefit of Mr. Fennell and Mr. McMahon." Affidavit of Leocadio C. Mafnas (hereafter "Mafnas Affidavit") at 2 (Oct. 7, 1986). He further stated that McMahon personally paid him the $500 consideration for the option. Id.[20]

"I am not, nor have I ever been, a 'passive agent, engaged and controlled by Attorney Fennell . . .' as alleged [by Mafnas] . . . ." Declaration of Marian Aldan-Pierce (Aug. 27, 1986) (hereafter "Aldan-Pierce Affidavit"). She also stated:

. . . .

> 6. I have agreed with Randall Fennell and Brian McMahon that, if I prevail in this action, I will lease them the subject property for the maximum length provided by law. They in return have agreed to provide the funds to exercise the option. I will retain the fee ownership.

---

[20]Although untimely filed, this affidavit was considered by the trial court when it ruled upon Aldan-Pierce's motion for summary judgment. Aldan-Pierce v. Mafnas, 2 CR at 858-59.

141

. . . .

Aldan-Pierce Affidavit at 2.

At the summary judgment hearing, the trial court allowed Aldan-Pierce to file a reply memorandum to Mafnas' memorandum in opposition by the following day, but made no mention of permission to file supplemental affidavits. Aldan-Pierce v. Mafnas, Civil Action No. 86-86, Transcript of Proceedings at 29 (October 8, 1986). Nonetheless, after the hearing Aldan-Pierce filed three supplemental affidavits in addition to her reply memorandum. It is not clear whether the trial court considered these post-hearing affidavits in rendering summary judgment, there being no reference to them in its memorandum opinion. The court apparently did not act upon Mafnas' motion to strike the supplemental affidavits.

The supplemental affidavits were evidently introduced to prove that the oral agreement between Aldan-Pierce and Fennell and McMahon did not require Aldan-Pierce to hold or convey title to the property pursuant to their instructions. "Under our agreement, they receive a lease, but other than that what I do with the title is my business." Supplemental Affidavit of Marian Aldan-Pierce (Oct. 9, 1986) (hereafter "Aldan-Pierce Supplemental Affidavit").

VI.

Since the material facts are not in dispute, we must determine whether the law was correctly applied below. Kan Pacific Saipan, Ltd., supra.

We begin by noting that Fennell and McMahon--neither of whom

142

are of Northern Marianas descent[21]--may not legally acquire "permananent and long-term interests in real property within the Commonwealth." Article XII, § 1. Persons who are not of Northern Marianas descent are prohibited from acquiring such interests by "sale, lease, gift, inheritance or other means." Article XII, § 2. Any transaction violating the constitutional restriction is void ab initio--void from the beginning, as if it had never occurred. Article XII, § 6.

A. "Freehold Interests" under Article XII

The "permanent and long-term interests" restricted from acquisition by persons who are not of Northern Marianas descent "includes freehold interests and leasehold interests of more than fifty-five years . . . ." Article XII, § 3.[22] "Freehold interests are all types of ownership or title--fee simple, fee tail, and life estate . . . ." Committee on Personal Rights and Natural Resources, Report to the [First NMI Constitutional] Convention, Committee Recommendation No. 8: Restrictions on Land Alienation at 7 (November 11, 1976).[23] A "freehold" is:

> An estate in land or other real property, of uncertain duration; that is, either of inheritance or which may possibly last for the life of the tenant at the least (as distinguished from a leasehold) . . . .

---

[21]This point is not at issue.

[22]As noted in part IV B, infra, prior to 1985 this provision specified maximum leasehold interests of forty years.

[23]If necessary, in construing constitutional provisions we will consult legislative history. Camacho v. Northern Marianas Retirement Fund, No. 90-007 (N.M.I. Sept. 21, 1990).

An estate to be a freehold must possess these two qualities: (1) Immobility, that is, the property must be either land or some interest issuing out of or annexed to land; and (2) indeterminate duration, for if the utmost period of time to which an estate can endure be fixed and determined, it cannot be a freehold.

Black's Law Dictionary 598 (5th ed. 1979). "An equitable estate is considered, to all intents and purposes, as a legal estate." 31 C.J.S. Estates § 5 (1964). An equitable interest of indeterminate duration is encompassed within a freehold interest.[24] The absence of any language excluding such interests from the restriction in Article XII leads us to conclude that they are within the restriction.

On its face, the option at issue provides that a person of Northern Marianas descent will acquire title to the property if it is exercised. Mafnas argues that although Villagomez' name appears on the option, she (and now Aldan-Pierce, as her assignee) will acquire only bare legal title to the property, should he transfer

---

[24]This interpretation comports with the apparent intent of Section 805 in restricting acquisition of "interests" in real property:

> [N]ormal usage of the term in American law would cover any right to use or derive profit from land for any period of time. Thus, not only ownership and leases are covered; equitable interests, of the sort possessed by the beneficiary of a trust . . . would . . . appear to be reached.

Office of Transition Studies and Planning, Briefing Papers for the Delegates to the Northern Marianas Constitutional Convention, Briefing Paper No. 12: Restrictions on Land Alienation at 19-20 (1976). See also Sorenson v. City of Bellingham, 496 P.2d 512, 514 (Wash. 1972) ("[f]reeholders are owners of either a legal or equitable title to real estate"); 31 C.J.S. Estates § 1 (the term "interest" as applied to property "may include both legal and equitable rights").

his title. He contends that Fennell and McMahon have already acquired an equitable fee interest in the property, in violation of Article XII. This occurred, he asserts, when Villagomez—acting as an agent-trustee—acquired the equitable fee interest upon exercise of the option.

Initially, we must determine whether Villagomez acquired such an interest.

### B. Acquistion of Equitable Fee by Optionee

"An option to purchase property is a contract wherein the owner, in return for valuable consideration, agrees with another person that the latter may buy property within a specified time upon expressed terms and conditions." Mohr Park Manor, Inc. v. Mohr, 424 P.2d 101, 104 (Nev. 1967), appeal after remand, Mohr Park Manor, Inc. v. Bank of Nevada, 490 P.2d 217 (Nev. 1971). "[S]o long as it remains unaccepted, [an option] is a unilateral writing lacking mutual elements of a contract, but when accepted by [an] optionee, an executory contract, which is mutually binding on the parties, arises." Id. at 105; see also Anderson v. Overland Park Credit Union, 643 P.2d 120 (Kan. 1982). "[W]hen the optionee has made his election and the contract has ceased to be an option and has ripened into a mutually enforceable bilateral contract, it becomes subject to specific performance." Bobo v. Bigbee, 548 P.2d 224, 229 (Okla. 1976). The optionee becomes the owner of an equitable interest in the land. Phillips v. Tetzner, 53 A.2d 129

145

(Pa. 1947); <u>Commonwealth v. Gerlach</u>, 159 A.2d 915 (Pa. 1960).[25]

■■■Thus, when Villagomez exercised the option, she acquired an equitable interest in the property. <u>Phillips</u>, <u>supra</u>.[26]

We now consider whether the record supports Mafnas' contention that Villagomez acted for Fennell and McMahon through an agency-trust relationship.

## C. The Agency-Trust Relationship

### Agency

■■■An agent is a person who agrees to act for and is subject to the control of another. <u>Repeki v. MAC Homes (Saipan) Co., Ltd.</u>, No. 90-002 (N.M.I. Mar. 14, 1991) quoting <u>Restatement (Second) of Agency</u> §§ 1, 14 (1958).[27] An agency relationship must be based on

---

[25]An equitable conversion occurs

> when a contract for the sale of real property becomes binding upon the parties. The purchaser is deemed to be the equitable owner of the land and the seller is considered to be the owner of the purchase price. This, because of the maxim that equity considers as done that which was agreed to be done.

<u>Harrison v. Rice</u>, 510 P.2d 633, 635 (Nev. 1973). "Equitable conversion does not occur on the date of an option contract because such a contract is not subject to specific performance on that date, but where the option has been exercised, there is a conversion." 18 C.J.S. <u>Conversion</u> § 6 (1990).

[26]An assignee of an optionee may enforce vested contract rights. <u>Beran v. Harris</u>, 205 P.2d 107 (Cal. Dist. Ct. App. 1949). Thus, as Villagomez' assignee, Aldan-Pierce may enforce the vested right that arose after the option was exercised.

[27]Two or more persons may act jointly to engage and authorize an agent to act on their behalf. <u>Restatement (Second) of Agency</u> § 20, Comment f. Common law rules expressed in the <u>Restatements</u> are pertinent to our analysis under 7 CMC § 3401, which provides that such rules "shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law

146

an agreement between the parties. Repeki, supra. An agency relationship may exist "although the parties did not call it agency and did not intend the legal consequences of the relation to follow." Restatement (Second) of Agency § 1, Comment b.

"The existence of an agency relationship is generally a question of fact to be determined by the trier of fact." Repeki, slip op. at 14. However, the existence of such a relationship is a question of law where the material facts from which it is to be inferred are not in dispute. Id. at 15. The material facts from which Mafnas urges that an agency relationship can be inferred were not in dispute. Accordingly, this issue presents a question of law which we review de novo. Id.

Aldan-Pierce contends that she is not Fennell and McMahon's agent--that their agreement is actually an entrepreneurial venture akin to a partnership.[28]

Despite Aldan-Pierce's protestations to the contrary, the trial court was correct in concluding that her predecessor Villagomez was Fennell and McMahon's agent. Villagomez agreed to act at their direction, and did so when she signed the option on September 15, 1984, and exercised it on July 6, 1985. See Dixon v. Huggins, 495 S.W.2d 621 (Tex. Ct. App. 1973) (party purchasing property with payor's knowledge, permission and money was payor's agent in transaction).

---

to the contrary . . . ."

[28]This contention is examined in part VII B, infra.

147

As Villagomez' successor, Aldan-Pierce assumes the role of agent.

As noted above, the trial court ruled that the agency relationship will terminate the moment Aldan-Pierce leases the property to Fennell and McMahon, and a constitutionally permissible lessor-lessee relationship will be established. Aldan-Pierce contends that (even accepting that she is currently Fennell and McMahon's agent) the ruling is correct. Because of our analysis below, we do not need to consider the question of precisely when the agency relationship will terminate. That is because Aldan-Pierce acts as Fennell and McMahon's trustee.

## Trust

### A. Resulting Trust

"Where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid, except as stated in §§ 441, 442, and 444." Restatement (Second) of Trusts § 440 (1959).[29] "Property that is purchased by an agent in his own

_____

[29]This rule is based upon an inference that "the purchaser does not intend that the transferee should have the beneficial interest in the property, but that the purchaser himself shall have the beneficial interest." Id., Introductory Note to Topic 4 at 391. "The rule of equity is that when property is taken in the name of a grantee who did not advance the consideration, there is a presumption that the grantee holds the legal title subject to the equitable ownership of the person who advanced the consideration." Richards v. Richards, 489 P.2d 928, 930 (Wa. App. 1971); see also Becchelli v. Becchelli, 508 P.2d 59 (Ariz. 1973). It is important to note that a resulting trust may arise regardless of whether the transferee is the agent of the purchaser. See, e.g., United States v. District of Columbia, 596 F.Supp. 725 (D.Md. 1984) (in dispute over ownership of hospital property, although U.S. took title to

name, but with the principal's money, is held in trust for the benefit of the principal." Dixon, 495 S.W.2d at 625; see also 89 C.J.S. Trusts § 114 (1955).[30]

The trustee of a resulting trust holds only the naked legal title for the benefit of the person furnishing the consideration, Ohio State Life Ins. Co. v. Union Properties, 52 N.E.2d 542, 543 (Ohio Ct. App. 1943), who holds the equitable interest.[31]

"Within the rule that a resulting trust arises in favor of the one paying for a conveyance to another, a 'conveyance' includes any transfer of title, legal or equitable . . . ." 89 C.J.S. Trusts § 118; see McClellan v. Beatty, 53 N.E.2d 1013 (Ind. App. 1944); rehearing denied 55 N.E.2d 327 (Ind. App. 1944) (equitable title held by vendee under executory land sale contract subject to resulting trust in favor of payor). Thus, since Villagomez (and now Aldan-Pierce, as her assignee) has acquired an equitable interest in the property, unless any exception applies a resulting trust for this interest has arisen in favor of the persons who

---

property, District of Columbia was entitled to resulting trust because it paid purchase price and Congress intended it to have equitable interest); Lewis v. Spitler, 403 A.2d 994 (Pa. Super. Ct. 1979) (party who provided acquaintance with part of sum used to acquire property entitled to partial resulting trust in property).

[30]If the agent wrongfully takes title in his own name, the agent may hold the property upon a constructive trust for his principal. See Restatement of Restitution § 190 (1937).

[31]"[L]egal and equitable ownership of property may be vested in different persons, especially in situations where a question of trusts arises." Hereford Land Co. v. Globe Industries, Inc., 387 S.W.2d 771, 775 (Tex. Ct. App. 1965).

provided the option consideration, Fennell and McMahon.[32]

The exceptions cited in Restatement (Second) of Trusts § 440 preclude a resulting trust if the payor: (1) manifests an intention that no trust should arise (§ 441), (2) purchases the property in the name of a relative "or other natural object of bounty" (§ 442), or (3) purchases the property to accomplish an illegal purpose (§ 444).

We will initially consider the last two exceptions.

Neither Villagomez nor Aldan-Pierce are "natural object[s] of bounty" to Fennell or McMahon:

> The rule stated in this Section is applicable where the payor and transferee respectively are in the relation of husband and wife; father and child; mother and child; father-in-law and son-in-law; grandparent and grandchild. . . . It applies also where the payor stands in loco parentis to the transferee; that is, where the payor whether or not related to the transferee has assumed to act in the place of a parent of the transferee.

Id. § 442, Comment a. Fennell and McMahon are not related to Villagomez or Aldan-Pierce, and their social or professional association with them are insufficient to trigger this exception.

With respect to the third exception--purchase in the name of another to accomplish an illegal purpose--closer analysis is necessary. An analogy may be drawn to case law from jurisdictions in which it is (or was formerly) illegal for aliens to acquire land. Land acquired by an alien is subject to forfeiture:

> In such States the equitable interest of an alien bene-ficiary of a trust of land is likewise subject to

---

[32]The record is unclear as to whether the option consideration belonged to both Fennell and McMahon. In light of our ultimate decision in this case, this question is academic.

150

forfeiture. . . . [I]f an alien pays the purchase price for land and at his direction the land is transferred to another under such circumstances that a resulting trust would arise if the payor were not an alien, a resulting trust arises in favor of the alien, and his interest is subject to forfeiture . . . .

Id., § 444, Comment f. Thus, unless and until an alien's equitable interest is ruled invalid in a judicial proceeding, a resulting trust in real property in the alien's favor is valid. Isaacs v. De Hon, 11 F.2d 943 (9th Cir. 1926).

We adopt the principle set forth in Isaacs. A resulting trust in real property in the Commonwealth in favor of a person who is not of Northern Marianas descent is valid, unless the equitable interest held for them in trust is declared, in a judicial proceeding, to be violative of Article XII. If the equitable interest is ruled violative of Article XII, the underlying transaction through which the person who is not of Northern Marianas descent acquired the interest becomes void ab initio.[33] Article XII, § 6.

Accordingly, the third exception to the presumption of a resulting trust does not apply in this case.

The first exception--Restatement (Second) of Trusts § 441 (a resulting trust will not arise if the payor manifests an intention that no trust should arise)--is, at first glance, potentially applicable. However, according to official commentary to this

---

[33]In most U.S. jurisdictions prohibiting acquisition of land by aliens, only the state may bring proceedings to divest the alien of his property. See, e.g., Isaacs, supra. This is not the case in the NMI. When the issue has been properly raised, violations of Article XII may be addressed in proceedings involving only private parties.

151

provision:

> Where a transfer of property is made to one person and the purchase price is paid by another, the inference that a resulting trust was intended is rebutted if it appears that the payor intended that the transferee should have the beneficial interest in the property transferred. This is the case where it appears that the payor intended to make a gift of the property to the transferee (see § 447), or to make a loan of the purchase price to the transferee. See § 445. So also, no resulting trust arises where the purchase price was paid to discharge a debt or other obligation owed by the payor to the transferee. See § 446.

Id., Comment a. There is no evidence in the record that Fennell and McMahon intended to make a loan of the purchase price to Villagomez, or that the money was paid to discharge a debt or other obligation.

Did Fennell and McMahon intend to make a gift of the property to Villagomez? In fact, the record indicates that prior to exercise of the option, the pair manifested an intention to retain an equitable interest of indeterminate (i.e., uncertain) duration. Villagomez' affidavit supports this conclusion.[34] At the very

---

[34]The record indicates that there may have been an ulterior motive for acquiring title in Villagomez' (or Aldan-Pierce's) name: to obtain a constitutionally impermissible interest in real property under the appearance of compliance with Article XII. According to official commentary to Restatement (Second) of Trusts § 441:

> Among the factors which are or may be of importance in determining whether or not the payor manifested an intention to make a gift of the property to the transferee, are (1) declarations as to his intention made by the payor before or at the time of or subsequent to the transfer; (2) the relationship between the payor and the transferee; (3) whether the transferee is an individual or a corporation, and if a corporation whether it is a charitable corporation; (4) the relative financial positions of the payor and the transferee; (5) whether a gift by the payor to the transferee would be

152

least, it is clear that Fennell and McMahon intended to retain an equitable interest limited to a leasehold for the maximum period permitted under Article XII. For the reasons stated below, Fennell and McMahon could not make a gift of this interest to Villagomez or Aldan-Pierce at the time of or subsequent to their acquisition of it.

To explain why this is so, it is necessary to state our ultimate decision in this case.

Today we rule that a resulting trust has arisen in favor of Fennell and McMahon for a constitutionally impermissible interest in real property. Since this challenged acquisition violates Article XII, we declare it invalid. Because Article XII, § 6 provides that transactions underlying impermissible acquisitions of real property are void ab initio, our decision "springs back" to September 15, 1984, when the option (the underlying transaction) was executed. Fennell and McMahon are thus retroactively divested of their constitutionally impermissible interest. Thus, they could not (and may not now) make a gift of that interest to Villagomez or Aldan-Pierce. In short, they had (have) nothing to give.

 Accordingly, because of principles set forth in the

---

improvident; (6) the presence or absence of any probable reason for taking title in the name of the transferee other than to give him the beneficial interest.

Id., Comment b (emphasis added). "It is easier to find a manifestation of intention to make a gift [to rebut the presumption of a resulting trust] where no probable reason for taking title in the name of a transferee exists other than to give him the beneficial interest than it is where such reasons exist." Id.

153

Restatement (Second) of Trusts and because of the operative effect of Article XII, no exception applies in this case to rebut the presumption of a resulting trust. Despite Aldan-Pierce's contention to the contrary, such a trust has arisen in favor of Fennell and McMahon.[35]

## B. Resulting Trust for Limited Interest

Aldan-Pierce cites authority for the proposition that a resulting trust may be rebutted in part. She contends that although Fennell and McMahon may have acquired an equitable interest in real property in the Commonwealth, their interest is limited to a constitutionally permissible leasehold.

Fennell and McMahon disclaim any intention to take more than a leasehold for fifty-five years, the maximum interest they may legally acquire under Article XII. They contend that the underlying fee will remain with Aldan-Pierce.

It is, in fact, possible for a payor to acquire a leasehold interest in real property through a resulting trust. According to pertinent authority:

> Where a transfer of property is made to one person and a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price, unless he manifests an intention that no resulting trust should arise or that a resulting trust to that extent should not arise.

---

[35]A resulting trust may arise even though the party to be charged as trustee "may never have agreed to the trust and may have really intended to resist it." Shepard v. Dougan, 76 P.2d 442, 445 (Idaho 1937); see also Hawe v. Hawe, 406 P.2d 106 (Idaho 1965).

154

Restatement (Second) of Trusts § 454. A relevant illustration of this principle is afforded in Byers v. Doheny, 287 P. 988 (Cal. Dist. Ct. App. 1930).[36] In Byers, a payor provided one-quarter of the purchase price for a parcel of real property under an agreement that he would be entitled to a leasehold interest. According to the Byers court:

> If the parties had expressly agreed that the plaintiff would pay $25,000 for the leasehold interest and the defendant $75,000 for the land subject to the lease, the title to be taken in defendant's name, then, upon the consummation of the transfer, the defendant would undoubtedly hold title to the leasehold interest in trust for the plaintiff. This is in effect what the parties actually did, and the conclusion follows that the defendant holds title to the leasehold interest in trust for the plaintiff.

Id., 287 P. at 992.

As noted above, the record in this case indicates that Fennell and McMahon intended to retain an equitable interest of indeterminate duration. It is plain that they paid the _entire_ option consideration. They also clearly intend to pay the _entire_ purchase price. Villagomez paid nothing, and Aldan-Pierce is to pay nothing. This being so, the principle set forth in Restatement (Second) of Trusts § 454 is inapplicable.

The resulting trust that has arisen in favor of Fennell and McMahon is thus not rebutted in part.[37] They have acquired an

---

[36]See also 5 A. Scott The Law of Trusts § 454.4 (3rd Ed. 1967).

[37]We recognize that commentary to Restatement (Second) of Trusts § 441 implies that it may be possible under some circumstances to limit a resulting trust to a leasehold interest despite the fact that a transferee acquiring legal title did not pay any of the purchase price. Id., Comment f. (See illustrations 1 and 2--limitation to resulting trust in life estate. We note

155

equitable interest of indeterminate duration in real property in the Commonwealth.

## Agency-Trust

 "An agency is not a trust." Restatement (Second) of Trusts § 8.

> Agencies and trusts resemble each other in many respects, in that both are relations of trust and confidence, but their points of difference are marked. An agent is ordinarily not the owner of property for the benefit of his principal, while a trustee *always* holds the *title* to property for his cestui que trust.

Kuck v. Sommers, 100 N.E.2d 68, 75 (Ohio Ct. App. 1950) (emphasis in the original). "An agent undertakes to act on behalf of his principal and subject to his control . . . a trustee as such is not subject to the control of the beneficiary, except that he is under a duty to deal with the trust property for his benefit in accordance with the terms of the trust and can be compelled by the beneficiary to perform his duty." Restatement (Second) of Trusts § 3, Comment b.

 On the other hand, "[o]ne who has title to property which he agrees to hold for the benefit and subject to the control of another is an agent-trustee and is subject to the rules of agency."

---

that a life estate is a freehold interest.) We are unable to find any case authority on point. Regardless, if this common law principle applied in the NMI, Article XII would effectively be nullified. We cannot presume that Article XII "is a vain effort, or a nullity" and must interpret it to give it effect. Ada v. Sablan, No. 90-006, slip op. at 13, n.18 (N.M.I. Nov. 16, 1990), quoting Levy v. Kimball, 465 P.2d 580, 583 (Haw. 1970) (noting rule of statutory construction). Therefore, this principle does not apply in the NMI.

Restatement (Second) of Agency § 14B (1958). Aldan-Pierce is in the unusual position of occupying this dual relationship with Fennell and McMahon. See Dixon, supra (agent purchasing property in his own name with principal's money held property in trust for benefit of principal).

 One duty imposed under the rules of agency applies to agents holding title:

> Unless otherwise agreed, an agent who holds the title to something for the principal is subject to a duty to the principal to use reasonable care in the protection of the title which he so holds, to act in accordance with the directions of the principal, to use it only for the principal's benefit, and to transfer it upon demand or upon the termination of the agency.

Id. § 423.[38] As set forth below, elements of this duty are also required of a trustee of a resulting trust.

## D. The Duty of the Trustee of a Resulting Trust

 'The trustee of a resulting trust, like the trustee of an express trust, is in a fiduciary relation to the beneficiary." Restatement (Second) of Trusts, Introductory Note to Topic 1 at 326. "The trustee of a resulting trust . . . is ordinarily under a duty merely to convey the property to the beneficiary or in accordance with his directions." Id. at 325.

---

[38]See also Moon v. Phipps, 411 P.2d 157 (Wash. 1966):

> Loyalty is the chief virtue required of an agent. . . .
> This loyalty demanded of an agent by the law creates a
> duty in the agent to deal with his principal's property
> solely for his principal's benefit in all matters
> connected with the agency.

411 P.2d at 161, citing Restatement (Second) of Agency § 387.

157

"A resulting trust . . . is always a passive or dry trust, a mere holding of the title for the benefit of another, as the law, in creating a resulting trust in any one who takes title without paying the consideration, never imposes on such grantee any duties or responsibilities as to its management or control or disposition, except . . . to reconvey to the cestui que trust or at his direction." Shelton v. Harrison, 167 S.W. 634, 638 (Mo. Ct. App. 1914).[39] However, the trustee is also "bound not to sell or incumber the property to the injury of the person for whose benefit the trust [is] presumed to arise." Millograv v. Zacharias, 165 P. 977, 978 (Cal. Dist. Ct. App. 1917).

Aldan-Pierce insists that she is under no duty to hold or dispose of title to the property subject to Fennell and McMahon's wishes. "Under our agreement, they receive a lease, but what I do with the title is my business." Aldan-Pierce Supplemental Affidavit. This is a misconception based on the assumption that a resulting trust in an equitable interest of indeterminate duration has not arisen. In fact, under the principles noted above, Aldan-Pierce is restricted in what she may do with title to the property. Shelton, supra; Millograv, supra.

"A resulting trust terminates if the legal title to the trust

---

[39]See also Seabury v. Costello, 26 Cal.Rptr. 248, 251 (Cal. Dist. Ct. App. 1962) ("[t]he duties of a resulting trust are not active; a resulting trustee merely holds legal title for the beneficiary and, at a proper time, is bound to make a proper conveyance"); Laing v. Laubach, 43 Cal.Rptr. 537, 539 (Cal. Dist. Ct. App. 1965) ("[t]he trustee has no duties to perform, no trust to administer, and no purpose to carry out except the single one of holding or conveying according to the beneficiary's demands").

property and the entire beneficial [i.e. equitable] interest become united in one person." Restatement (Second) of Trusts § 410.[40]

> If a trustee of a resulting trust transfers the trust property to the beneficiary or at his direction, the resulting trust terminates. . . . If the beneficiary of a resulting trust has the entire beneficial interest in the trust property, he can at any time compel the trustee to transfer the trust property to him and thus terminate the resulting trust.

Id., Comment b.[41]

## VII.

As noted above, Mafnas contends that Fennell and McMahon have acquired an equitable fee interest in the property through Villagomez. We agree.

## A. Fennell and McMahon's Equitable Fee Interest

 Villagomez acquired an equitable interest in the property when she exercised the option on July 6, 1985. Phillips, supra. As payors of the option consideration, Fennell and McMahon actually own this interest under a resulting trust. McClellan, supra.[42]

---

[40]"This result is a necessary consequence of the vesting of both legal and equitable titles in the beneficiary, because there is no longer any purpose in keeping the trust relationship alive." Zakaessian v. Zakaessian, 161 P.2d 677, 679 (Cal. Dist. Ct. App. 1945).

[41]Refusal on the part of a trustee of a resulting trust to reconvey title to the beneficiary is a breach of trust and gives the beneficiary a cause of action against the trustee. Seabury, supra.

[42]The term "owner", as applied to real property, includes "any person who has an equitable right to, or interest in, land." 73 C.J.S. Property § 25 (1983). "The equitable ownership is regarded in equity as the real ownership. The cestui que trust [trust beneficiary] is the beneficial and substantial owner, and, in the consideration of a court of equity, is actually seized of the free-

Since Fennell and McMahon's equitable interest is of indeterminate (i.e., uncertain) duration it is a freehold interest.

██ If we were to affirm the trial court judgment compelling Mafnas to convey legal title, Aldan-Pierce would acquire only that: naked legal title. Ohio State Life Ins. Co., supra. Fennell and McMahon would continue to hold their freehold interest, with the right to compel Aldan-Pierce to convey legal title to them or to whomever they chose, at a time of their choosing. Shelton, supra; Millograv, supra.

Since Fennell and McMahon are not of Northern Marianas descent, their acquisition of a freehold interest in the property violated Article XII. The underlying transaction—the option executed on September 15, 1984—is thus void ab initio. Article XII, § 6.

## B. The "Other Means" of Acquisition in Article XII

 In this case, a freehold interest in Commonwealth real property was acquired by persons who are not of Northern Marianas descent through a trustee who is of such descent. This is one of the "other means" of acquisition prohibited by Article XII, § 2: "[t]he term acquisition . . . includes acquisition by sale, lease, gift, inheritance or other means." (Emphasis added.) The constitutional restriction would be undermined if persons who are not of Northern Marianas descent could acquire a prohibited

---

hold." Illinois National Bank of Springfield v. Gwinn, 61 N.E.2d 249, 254 (Ill. 1945).

160

interest via a trust relationship.[43] The only interests such persons are permitted to acquire are leaseholds of not more than fifty-five years. Article XII, § 3. No other exceptions are permitted[44] to the restriction in Article XII, § 1. "For purposes of constitutional interpretation, the express mention of one thing implies the exclusion of another which might logically have been considered at the same time." State ex rel. O'Connell v. Slavin, 452 P.2d 943, 946 (Wash. 1969) (additional exception to constitutional restriction not permitted).

If a resulting trust in real property in the Commonwealth has arisen in favor of a person who is not of Northern Marianas descent,[45] it is subject to being declared invalid in a judicial proceeding if the equitable interest held for them in trust violates Article XII.

In this case, evidence supporting a constitutionally permissible trust is absent.

We are not saying that Aldan-Pierce--a person of Northern

---

[43]Cf. Seminar on the Law of Real Property Acquisition in Mexico, 12 Ariz. L.R. 265, 285-86 (1970) (aliens unable to acquire title to real property in Mexico may acquire beneficial title in property through trust only upon approval of the Mexican government). This article was noted in Office of Transition Studies and Planning, Briefing Papers for the Delegates to the Northern Marianas Constitutional Convention, Briefing Paper No. 12: Restrictions on Land Alienation (1976).

[44]Apart from certain inheritence rights and transfers pursuant to a mortgage foreclosure. Article XII, § 2. See part IV B, infra.

[45]We note that such a trust may be rebutted by clear evidence that the money used to purchase the property was a valid gift, loan, or payment to discharge a debt or other obligation. Restatement (Second) of Trusts §§ 445, 446, 447.

Marianas descent—may not legally acquire in her own name a "permanent or long-term interest[] in real property within the Commonwealth." Article XII, § 1. Rather, we are saying that Fennell and McMahon—persons who are not of Northern Marianas descent—may not acquire such interests indirectly through her or any other persons of Northern Marianas descent via a trust relationship.

We are not persuaded of the accuracy of Aldan-Pierce's claim that her agreement with Fennell and McMahon is an entrepreneurial partnership, whereby she provides "legal capacity" and Fennell and McMahon provide capital. The record does not support this contention. Even if we accepted it, we are not convinced that the framers of the NMI Constitution intended that acquisition of property under such an agreement would be permissible under Article XII.

We are, however, concerned with the possibility that a decision in favor of Mafnas may "unleash chaos into the Northern Marianas land title system and economy." Appellee's brief at 43.[46] We note that our ruling might pose problems for land title researchers, who must now ascertain whether a conveyance of the sort we rule invalid in this case has occurred in the chain of title of tracts of Commonwealth real property. An infirmity may not be immediately apparent in land records. We also note amicus' concern that our decision may create difficulties with respect to loans secured by real property, title to which may be constitution-

---

[46]Amicus makes a similar claim.

162

ally tainted.

Though these difficulties are troublesome, they do not permit us to disregard the mandate of Article XII and permit the trust relationship that has arisen in this case to remain in force. "It is not for the court to engraft an exception where none is expressed in the [state] constitution, no matter how desirable or expedient such an exception might seem." O'Connell, 452 P.2d at 946. We are duty-bound to give effect to the intention of the framers of the NMI Constitution and the people adopting it. Cobb v. State by Watanabe, 722 P.2d 1032 (Haw. 1986).[47]

## VIII.

Based on the foregoing analysis, we hold that the exercise of the option at issue violated Article XII. Fennell and McMahon acquired a constitutionally impermissible interest in real property in the Commonwealth when the option was exercised on July 6, 1985. Accordingly, the underlying transaction became void *ab initio*, effective September 15, 1984, when it was executed. Article XII, § 6.

The Commonwealth Trial Court's summary judgment granting specific performance is REVERSED, and the case is REMANDED for

---

[47]Our interpretation of Article XII should be conclusive. See, e.g., American Federation of Labor v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873 (1946) (interpretation of state constitution by state courts conclusive in U.S. Supreme Court review).

entry of judgment in favor of Mafnas.[48]

Entered this ___5ᵗʰ___ day of July, 1991.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice

_____

[48]We note that if a property transaction is rendered void as violative of Article XII, an equitable remedy may be available to a possessor of property who constructed improvements under the good-faith (but erroneous) belief that they held clear title or a valid leasehold. Repeki, supra.